**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA (Fresno)

| | |
|---|---|
| Tracy Arthur Stone, | No. 1:05-CV-1377-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Vasquez and Rodriguez, | |
| Defendants. | |

Pending before the Court is Defendants Vasquez and Rodriguez's Motion for Summary Judgment (Doc. # 79). For the reasons that follow, the Court grants Defendants' motion.

**I.  BACKGROUND**

Plaintiff Tracy Arthur Stone is a prisoner in the California state penal system. Defendants were correctional officers during the events in question. Stone claims that Defendants violated his Eighth Amendment rights when "they knowingly used excessive and unnecessary force maliciously and sadistically to inflict pain and injury" on him. (Doc. # 101 at p. 5.)

On October 4, 2004, Stone attempted to obtain a cigar butt by reaching through a fence. A corrections officer confronted Stone after observing Stone's attempt to obtain the cigar. Stone was stripped of his clothes and escorted to a holding cell at the Facility E program office. Eventually, Stone was released from the holding cell by Defendant Vasquez.

Vasquez escorted Stone across the yard and instructed Stone to continue towards Building 3, where Stone obtained his clothes. Stone then exited Building 3 in search of his pet lizards, nearing the area where he was asked to remove his clothes. Vasquez ordered Stone to return to Building 3. Stone decided "to protest" Vasquez's order, stopped walking, and told Vasquez to "take me to the hole." (Doc. # 101 at p. 8.) Stone turned, faced the wall, and placed his hands behind his back in order to be handcuffed. Vasquez handcuffed Stone and then placed his hand on Stone's right arm and pulled Stone away from the wall in an effort to escort Stone back to Building 3. Stone took two steps towards Building 3, "began to actively protest" Vasquez's orders because he did not want to return to Building 3, pulled his arm out of Vasquez's grasp and "bent over." (*Id.* at p. 9.)

In a sworn affidavit, Vasquez stated that he thought Stone was attempting to run away. As such, Vasquez pushed Stone to the ground, causing Stone's head to hit the asphalt. Stone began kicking his legs and moving side-to-side.[1] In an effort to control Stone, Vasquez placed his knees on Stone's back and restrained Stone's arms. Meanwhile, Defendant Rodriguez placed his knees on Stone's lower back and held Stone's left arm in an attempt to assist Vasquez in regaining control of Stone. Stone was then placed in leg restraints and ordered to stand upright in order to be escorted to the medical clinic. Stone refused to stand and, hence, Vasquez and Rodriguez had to carry Stone across the yard. While Defendants were carrying Stone across the yard, Stone alleges that he was being choked by his own t-shirt. Defendants respond that they were unaware Stone was being choked.

Upon arriving at the medical clinic, Stone was examined by two nurses, both noting the presence of abrasions on Stone's face. Stone also claims that a physician examined him

---

[1] Stone alleges that he "has no memory of the moments following his head impacting on the pavement," but regained consciousness once Vasquez was kneeling on him. (Doc. # 101 at p. 10.)

- 2 -

1 and noted a contusion across his neck.[2]

2 In November 2005, Stone filed this present action, alleging that Defendants violated
3 his Eighth Amendment right to be free from cruel and unusual punishment. Defendants now
4 seek summary judgment on Stone's second amended complaint.

5 **II.    ANALYSIS**

6 Summary judgment is appropriate when "the pleadings, depositions, answers to
7 interrogatories, and admissions on file, together with affidavits, if any, show that there is no
8 genuine issue as to any material fact and that the moving party is entitled to summary
9 judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, summary judgment is mandated
10 "against a party who fails to make a showing sufficient to establish the existence of an
11 element essential to that party's case, and on which that party will bear the burden of proof
12 at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

13 Initially, the movant bears the burden of pointing out to the Court the basis for the
14 motion and the elements of the causes of action upon which the non-movant will be unable
15 to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-
16 movant to establish the existence of material fact. *Id.* The non-movant "must do more than
17 simply show that there is some metaphysical doubt as to the material facts" by "com[ing]
18 forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.*
19 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P.
20 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury
21 could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
22 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create

23

24 [2] The Court has reviewed the document, the "Emergency Care Flow Sheet," that Stone
claims was produced by a physician. Plaintiff's Ex. T. The document provided by Stone is
25 very difficult to read and decipher. While the Court agrees that a neck contusion is noted,
26 it is nowhere clear whether the person making the notation is a physician, a nurse, or some
other medical personnel. In any event, whether the neck contusion was indeed noted by a
27 physician or some other medical personnel does not alter the Court's conclusion.

28

1  a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## A.  EIGHTH AMENDMENT

In the prison context, a correctional officer's use of "unnecessary and wanton infliction of pain" upon an inmate "constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). What constitutes "unnecessary and wanton infliction of pain," however, depends upon the nature of the alleged constitutional violation. *Id.* at 320. The proper standard in this case, which involves the use of force to quell an inmate's refusal to submit to orders, is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 320-21). Among the factors the Court should consider in determining whether the use of force was applied in a good faith effort or rather applied maliciously include: 1) the extent of injury suffered by the inmate; 2) the need for application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the correctional officers; 5) and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321.

### 1.  Extent of Injuries

After the altercation in question, Stone was taken immediately to the medical clinic. At the clinic, Stone was examined by two nurses, each noting the presence of abrasions on Stone's face. Stone also asserts that a physician noted the presence of a neck contusion, even though neither nurse made such a notation. Although the Court does not make light of

- 4 -

1 Stone's injuries, the extent of Stone's injuries are minimal.[3]  Given that Stone was
2 handcuffed when he attempted to flee Vasquez by pulling his arm out of Vasquez's grip, it
3 is not surprising that Stone received abrasions on his face; nor does the presence of such
4 abrasions support an assertion that Defendants were unreasonable in the amount of force they
5 applied to control Stone. Even assuming that Stone had a neck contusion, such an injury was
6 only caused by Stone's refusal to stand and walk towards the medical clinic. When Stone
7 refused to stand and walk, he left Defendants with no alternative other than to carry Stone
8 to the clinic. Defendants state that they had no knowledge that Stone was choking while they
9 were carrying him. Although Stone asserts that Defendants intentionally and maliciously
10 choked him by grabbing his t-shirt while they were carrying him, Stone submits no evidence
11 in support of such an assertion. Conclusory allegations, unsupported by factual material, are
12 insufficient to defeat a motion for summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045
13 (9th Cir. 1989). Again, the Court does not minimize the pain Stone experienced as a result
14 of his injuries, but the extent of Stone's injuries are minimal given the circumstances. While
15 significant injuries are not required in order to have a viable excessive force claim, the extent
16 of injury is one factor the Court may consider. *Hudson*, 503 U.S. at 7. As such, this factor
17 weighs against a conclusion that Defendants acted maliciously and sadistically for the very
18 purpose of causing harm to Stone.
19 ///
20 ///
21 ///

---

[3] Stone states that he underwent shoulder surgery and that such a surgery was necessary as a result of Defendant's action. While Stone submitted evidence of his surgery, he failed to submit any evidence that such a surgery was caused or even related to the October 4, 2004, altercation. No such shoulder pain was noted at the time of the examinations by the nurses and, moreover, the shoulder surgery did not take place until over a year after the incident in question. As such, the Court finds that Stone's surgery was not causally related to Defendants' efforts to control Stone, nor could a jury reasonably find so.

## 2. The Need for Force

Vasquez ordered Stone to return to Building 3.[4] Stone decided "to protest" Vasquez's order. So, Stone told Vasquez to "take me to the hole." (Doc. # 101 at p. 8.) Stone turned and faced the wall, and voluntarily placed his hands behind his back in order to be handcuffed. Vasquez handcuffed Stone and proceeded to place his hand on Stone's right arm. Vasquez then pulled Stone away from the wall in an effort to escort Stone back to Building 3. Stone took two steps towards Building 3, "began to actively protest" Vasquez's orders because he did not want to return to Building 3, pulled his arm out of Vasquez's grasp and "bent over." Vasquez stated that he believed Stone was fleeing and attempting to run away. In order to prevent Stone's attempt, Vasquez pushed Stone to the ground. Stone then began kicking his legs and moving side-to-side. At this point, Rodriguez intervened to assist Vasquez in regaining control of Stone.

Stone does not deny that he was protesting and refusing Vasquez's orders. Nor does Stone deny that, while Vasquez had control of his arm, Stone attempted–and succeeded–in freeing himself from Vasquez's control. Given the circumstances, even viewed in the light most favorable to Stone, the Court finds that Defendants did not act unreasonable in their belief that force was necessary in order to restore order. Given the record before the Court, Defendants were justified in using some degree of force to bring Stone in compliance and under control.

As our Supreme Court has noted, corrections officers must balance the need to maintain, and at times restore, discipline through the use of force against the risk of injury to inmates. *Hudson*, 503 U.S. at 6. Such situations require prison officials to act quickly and decisively. Moreover, such scenarios implicate the principle that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices

---

[4] While Stone asserts that Vasquez's order was non-verbal, Stone nevertheless admits that he understood Vasquez's order enough to deduce that Stone was required to return to Building 3.

that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). This factor weighs in favor of a conclusion that Defendants acted in good faith in an effort to restore order.

**3.     The Amount of Force**

In determining that some degree of force was necessary, the Court must now turn to whether the amount of force actually used was justified. Vasquez pushed Stone to the ground after Stone attempted to escape Vasquez's grasp. Both Defendants placed their knees on Stone in an effort to subdue Vasquez and regain control of him. Defendants were also required to carry Stone to the medical clinic because Stone refused to stand or walk to the clinic of his own accord. Given the need to ensure order and security, and Vasquez's reasonable belief that Stone was attempting to evade him, Vasquez's act of pushing Stone to the ground was a reasonable amount of force. Vasquez only acted to prevent Stone from fleeing. There were no other acts of physical violence committed against Stone. That is, once Stone was on the ground and no longer a threat to flee, Vasquez did not kick, punch, or otherwise physically strike Stone.

Moreover, Defendants placing their knees on Stone's back and attempting to restrain Stone's arms were only done in response to Stone's repeated kicking and flailing.[5] Given that Stone was constantly kicking and moving, Defendants' efforts to place their knees on Stone's back, restrain his arms, and place him in leg chains were reasonable amounts of force.

Lastly, Stone asserts that Defendants choked him when they grabbed him by his t-shirt in an effort to carry him to the medical clinic. As discussed earlier, Defendants aver that they

---

[5] Stone asserts that he was only kicking and thrashing because he was having a seizure. However, whether Stone was having a seizure or not does not alter the fact that Defendants had to reinstate order, an end they could not accomplish as long as Stone was kicking and moving side-to-side.

- 7 -

1  had no knowledge that Stone was choking, nor has Stone introduced any such evidence that
2  would contradict Defendants' assertions. Again, the very act of carrying Stone was only
3  necessary because Stone refused to stand and walk towards the clinic. The act of choking
4  Stone, even if it occurred as alleged by Stone, was incidental at most. Defendants were
5  merely attempting to transport Stone to the clinic, and by carrying him Defendants did not
6  apply an unreasonable amount of force.

7  Accordingly, this factor weighs against a finding that force was applied maliciously
8  and sadistically for the very purpose of causing harm.

**4.     The Threat Reasonably Perceived**

Defendants reasonably perceived a threat resulting from Stone's actions. While Stone was handcuffed and not likely to advance far in the yard, he was wilfully disobeying Vasquez's orders. Such actions, in an environment where order and submission to authority are critical, corroborate the perceived need to restore order. This is especially true when, after Stone was on the ground, he began kicking and flailing and refusing any commands issued by Defendants. In fact, Stone's actions caused the entire yard to be shut down. Defendants reasonably perceived a threat to the order and safety of the corrections facility. This factor weighs against Stone's Eighth Amendment claim.

**5.     Efforts to Temper the Severity**

Finally, the Court considers any actions taken to temper the use of force. Vasquez ordered Stone to return to Building 3 before he placed Stone in handcuffs. Vasquez also ordered Stone to quit resisting. Finally, Vasquez ordered Stone to stand once Stone was in leg chains. Given the Court's determination that Defendants actions were reasonable and justified as compared to Stone's actions, this factor weighs in Defendants' favor.

The Court has considered whether Defendants applied force in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. The various factors considered by the Court all support a conclusion that Defendants acted with a good faith effort to maintain and restore discipline, and not out of a desire to

- 8 -

maliciously and sadistically cause harm to Stone. Even when viewed in a light most favorable to Stone, a reasonable jury could not find an Eighth Amendment violation. Accordingly, the Court will grant summary judgment on Stone's Eighth Amendment claim.

### B.     Qualified Immunity

Even if the Court assumed that Stone's Eighth Amendment rights were violated, his claim is effectively barred. Stone's Eighth Amendment claim against Defendants is precluded by the doctrine of qualified immunity. "Government officials are given qualified immunity from civil liability under § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jensen v. City of Oxnard,* 145 F.3d 1078, 1085 (9th Cir. 1998) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). A reasonable person in Defendants' position, attempting to restore discipline with an inmate refusing to obey orders, would not have known that Defendants' actions were unlawful and in violation of the Eighth Amendment. Vasquez's pushing Stone to the ground after Stone pulled away from Vasquez's grip, Defendants' placing their knees on Stone's back in response to his kicking and moving, and Defendants' carrying Stone to the medical clinic because of Stone's refusal to stand and walk of his own volition, do not amount to actions that clearly violate Stone's constitutional rights. Any holding that such actions violated Stone's constitutional rights would be above and beyond any previous restraints contained in Eighth Amendment jurisprudence. Accordingly, Defendants would be entitled to qualified immunity, as such a requirement was not "clearly established" at the time of the events in question. *Jensen*, 145 F.3d at 1085.

### III.    Conclusion

The Court has reviewed the record and the evidence submitted by both parties.[6] In so doing, the Court has construed all disputed facts in the light most favorable to Stone.

---

[6] On November 16, 2009, Defendants lodged an October 4, 2004, recorded interview of Stone. Defendants lodged this item after Stone's response was filed. As such, the Court does not consider this piece of evidence in reaching its conclusions.

- 9 -

Even with this standard in mind, the Court finds that Stone does not have a colorable Eighth Amendment claim. Defendants did not engage in an unnecessary and wanton infliction of pain upon Stone. Rather, what little force was applied upon Stone was applied in a good faith effort to maintain and restore discipline. A reasonable jury could not find that Defendants violated Stone's Eighth Amendment rights. In any event, Defendants are entitled to qualified immunity as any such finding would be a departure from previous Eighth Amendment precedent.

Accordingly,

**IT IS ORDERED** that Defendants Vasquez and Rodriguez's Motion for Summary Judgment (Doc. # 79) is granted.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment for Defendants and against Plaintiff, with Plaintiff to take nothing.

**IT IS FURTHER ORDERED** that because Doc. # 39 is not a motion, the Clerk of the Court shall remove Doc. # 39 from the Court's pending motion list.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall close this case.

DATED this 12th day of January, 2010.

James A. Teilborg
United States District Judge